IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA N. KUNKLE,  **Plaintiff,** | : : : | CIVIL ACTION |
| vs. | : : | NO.   23-cv-1160 |
| MARTIN J. O'MALLEY,  **Commissioner of Social Security,**  **Defendant.** | : : : : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    **March 8, 2024**

Plaintiff Amanda N. Kunkle filed this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's decision denying her claim for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

**I.    PROCEDURAL HISTORY**

On November 11, 2020, Plaintiff protectively filed an application for SSDI, alleging disability beginning on August 1, 2018 (later amended to August 1, 2019), due to multiple sclerosis.  (R. 38, 178-86, 201).  Plaintiff's application was denied on the initial level on February 3, 2021, and on reconsideration on June 2, 2021, and she requested a hearing before an Administrative Law Judge (ALJ).  (R. 91-97, 99-108, 115-17).  The hearing occurred on December 8, 2021.  (R. 32-57).  Plaintiff, represented by counsel, appeared and testified at the

hearing, as did a vocational expert (VE). (*Id.*). On March 2, 2022, the ALJ issued a decision unfavorable to Plaintiff. (R. 13-31). Plaintiff appealed, and the Appeals Council denied his request for review on January 24, 2023, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On March 24, 2023, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (Compl., ECF No. 1). On July 28, 2023, the matter was reassigned from the Honorable David R. Strawbridge, United States Magistrate Judge, to me. (Order, ECF No. 8). On August 2, 2023, Plaintiff consented to my jurisdiction. (Consent, ECF No. 10). Plaintiff's Brief and Statement of Issues in Support of Request for Review was filed on August 7, 2023 (Pl.'s Br., ECF No. 11). On September 6, 2023, the Acting Commissioner at the time, Kilolo Kijakazi, filed her response. (Resp., ECF No. 12). Plaintiff filed a reply brief on September 14, 2023. (Reply Br., ECF No. 13).

## II.   FACTUAL BACKGROUND[1]

The Court has reviewed the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on January 31, 1992, and she was 27 years old on the amended alleged disability onset date. (R. 183). She completed high school and cosmetology school. (R. 202). Plaintiff previously worked as an assistant teacher at a daycare and at various jobs in the healthcare field, including as a personal care attendant, a mental health worker, a direct support professional, and a technical partner. (*Id.*).

---

[1] The Court's ruling in this matter implicates only Plaintiff's manipulative limitations. The Court limits its discussion of the facts accordingly.

A.     **Medical Evidence**

On February 2, 2021, State agency consultant Bettye Stanley, D.O., opined that Plaintiff has no manipulative limitations. (R. 66). Upon reconsideration, State agency consultant Edwin Malloy reached the same conclusion. (R. 83).

On January 20, 2022, Ziba Monfared, M.D., performed a consultative examination of Plaintiff. (R. 1525-48). Plaintiff did not require assistance during the examination except to tie her gown in the back. (R. 1533). Dr. Monfared recorded that Plaintiff had recently injured the index finger on her dominant right hand but did not seek medical attention. (R. 1531, 1533). However, due to the injury, Plaintiff lacked hand and finger dexterity, had difficulty holding and manipulating objects, and had a weak grip and pincer strength on the right hand. (R. 1534). Dr. Monfared diagnosed Plaintiff with "right index finger with some difficulty with dexterity right hand (acute injury) about ten days ago." (R. 1535). Plaintiff also exhibited mildly reduced range of motion in her right shoulder, although her range of motion in her left shoulder, elbows, wrists, hands and fingers were within normal limits, except for the recently injured right index finger. (R. 1543, 1545-46). She had "4/5" grip strength in her right hand and full grip strength in her left hand and in her arms. (R. 1534, 1546). She had no abnormalities in her arms, including any muscle atrophy. (R. 1534).

Dr. Monfared recorded that with her right hand Plaintiff could occasionally reach in all directions (broken down on the form into "overhead" and "all other" directions), handle and finger and frequently perform all remaining manipulations, including feeling and pushing/pulling. (R. 1538). She could frequently perform all these manipulations with her left hand. (*Id.*). Later in the form, Dr. Monfared checked the box indicating that Plaintiff could not sort, handle, or use paper/files. (R. 1541).

B. **Non-Medical Evidence**

Plaintiff completed an Adult Function Report on December 14, 2020. (R. 207-14). She stated that she was able to care for her two children (aged seven months and two years at the time), do laundry, prepare meals a few times per week, wash dishes, and vacuum, but that she needed help carrying the laundry. (R. 208-09). She did not check the box on the form indicating difficulty with reaching. (R. 212).

At the December 8, 2021 administrative hearing, Plaintiff testified that she experiences "extreme numbness" in her arms and tingling, numbness, and weakness in her hands, affecting her ability to hold even lightweight items for more than a "short amount of time." (R. 43, 47-48). She stated that her mother takes care of the housework and someone has to lift her children for her. (R. 43).

III. **LEGAL STANDARD**

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a

> listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). The Third Circuit has instructed, "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The Court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## IV.  ALJ'S DECISION

In her decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since August 1, 2019, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: multiple sclerosis, disorder of the spine, and right ankle instability (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never kneel, crawl, or climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs and occasionally perform all other postural activities. The claimant cannot use foot controls or push/pull with the lower extremities. She can have no exposure to unprotected heights. The claimant can occasionally reach and lift overhead, and can frequently reach in all other directions, handle, and finger. The claimant can perform unskilled work consisting of simple routine tasks and simple decision-making, with no more than occasional changes in the workplace. There are no limitations on interacting with coworkers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 31, 1992 and was 27 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of this decision (20 CFR 404.1520(g)).

(R. 17-27).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 27).

## V. DISCUSSION

Plaintiff raises two claims[2] in her request for relief:

> (1) Remand is required because the ALJ rejected the manipulative limitations offered by the consultative examiner based on a lay presumption that is not supported by the evidence of record.
>
> (2) Remand is required because the ALJ failed to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles [(DOT)]as to whether Ms. Kunkle could

---

[2] The Court sets forth Plaintiff's arguments in the order corresponding to the five-step sequential analysis.

7

> perform reasoning level 2 and 3 occupations with a restriction to simple, routine, tasks.

(Pl.'s Br., ECF No. 11, at 2).

### A. Manipulative Limitations Determined by Dr. Monfared

Regarding Dr. Monfared's opinion that Plaintiff could with her right hand occasionally reach in all directions, handle and finger and frequently feel and push/pull, and with her left hand frequently perform all these manipulations, the ALJ wrote:

> This opinion is partially persuasive regarding some of the . . . manipulative limitations. . . . However, Dr. Monfared based her assessment on a brief, one-time encounter with the claimant, with limited opportunity for meaningful record review. The undersigned has implemented different manipulative activities, i.e., no more than occasional reaching and lifting overhead, and frequent reaching in all other directions, handling, and fingering. Dr. Monfared restricted the claimant to occasional manipulation with the right upper extremity, but this was based on the claimant's acute right finger injury. The claimant did not seek medical treatment for this injury, and there is no additional evidence to suggest that this injury is expected to last at least 12 months.

(R. 25).

### 1. The Parties' Positions

Plaintiff concedes that the ALJ's assumption that the limitations assessed by Dr. Monfared regarding Plaintiff's ability to handle and finger with her right hand were due to her acute injury may be supported by the record, particularly Dr. Monfared's reference in her opinion to the injury and its effect on Plaintiff's ability to use her right index finger; however, she maintains that the injury would not explain her limited ability to reach. (Pl.'s Br., ECF No. 11, at 8). She notes that Social Security rulings define reaching as "extending the hands and arms in any direction" and distinguish it from the other manipulative functions. (*Id.* (citing SSR 85-15, 1985 56857, at *7)). She points out that doing an activity "frequently" entails an upper limit double that of doing it only "occasionally" (i.e., up to two-thirds rather than one-third of the

8

time) and insists that if the ALJ had credited the greater "occasionally" reaching limitations it would have eliminated all three jobs identified by the VE. (*Id.* at 8-9 (citing <u>DOT</u> §§ 205.367-014, 209.567-014, 209.587-010) (additional citations omitted)). Plaintiff denies that she is requesting the Court to reweigh the evidence but instead argues that the ALJ rejected a work-preclusive restriction in a medical opinion acknowledged to be "persuasive" on the basis of nothing other than her own lay assumption that the restriction stemmed from the acute finger injury. (*See id.* at 9-10 (citations omitted)).

In response, the Commissioner highlights portions of Dr. Monfared's examination results, including Plaintiff's then-recent injury to her right index finger for which she did not seek medical attention; the effect of the injury on her grip and pincher strength and ability to hold and manipulate objects; her lack of need for assistance during the examination except to tie the gown in the back; her full strength in her upper extremities; and her ability to lift and carry up to 20 pounds. (*Id.* at 10 (citing R. 1531, 1533-34, 1536-38)). He also summarizes the ALJ's discussion of Dr. Monfared's opinion and claims that Plaintiff's disagreement with the ALJ's reliance on the acute finger injury to discredit the "occasionally" limitations improperly "assumes the ALJ's collective manipulative limitations related solely to her abilities to handle and finger." (*Id.* at 11-12 (citing R. 25)). He agrees that reaching is distinct from handling and finer motor activities but notes that it is nonetheless a type of manipulation. (*Id.* at 12 (citing Program Operations Manual System DI 24510.006(C)(6)(b))). However, he maintains that the ALJ assessed limited abilities in reaching, handling and fingering based on Plaintiff's impairments collectively, did not explicitly tie the reaching limitations to the finger injury, and instead addressed the injury with a limitation to frequent handling and fingering. (*Id.* at 12 & n.4).

The Commissioner insists that substantial evidence supports the ALJ's determination that Plaintiff could frequently reach in all directions except overhead, including most physical examinations revealing full strength in the upper extremities, intact sensation and a normal EMG. (*Id.* at 12 (citing R. 327, 331-32, 336-37, 344, 379, 1307, 1339-40, 1388, 1402, 1447, 1461, 1511)). He points out that the ALJ determined Dr. Monfared's opinion to be only "partially persuasive" and that even if she had found it fully persuasive, that would not require the ALJ either to incorporate every limitation contained therein into the RFC or specifically reject the limitations. (*Id.* at 11 n.3 (citations omitted)). He posits that, in any event, the reaching limitations assessed by the ALJ properly accounted for Plaintiff's reported symptoms of radiating pain and numbness in her upper extremities. (*Id.* (citing R. 20-22, 325, 330, 333, 340-41, 397)).

Further, the Commissioner disputes that the ALJ's adoption of Dr. Monfared's "occasionally" reaching limitations would have compelled a "disabled" finding because the ALJ determined that "Plaintiff could perform a subset of the broader category of reaching (occasional reaching overhead and frequent reaching in all other directions)" and the DOT does not differentiate between reaching overhead and in other directions. (*Id.* at 12-13 & n.5 (citation omitted)). He continues that the DOT lists only the "maximum requirements" of jobs as normally performed, not the "range of requirements," but that a VE can supply "more specific information" regarding particular types of positions. (*Id.* at 13 (citing SSR 00-4p, 2000 WL 1898704, at *3)). He submits that this is what the VE did in this case when she identified three occupations Plaintiff could perform consistent with the reaching limitations determined by the ALJ. (*Id.*). Finally, he rejects Plaintiff's accusation that the ALJ merely substituted her own lay judgment for Dr. Monfared's professional opinion and submits that she instead "reached a

10

middle ground" between the State agency medical consultants finding no manipulative limitations and Dr. Monfared's more restrictive limitations. (*Id.* (citations omitted)).

Plaintiff replies briefly that an ALJ may reject a medical opinion in part but that he or she must nonetheless explain the basis for the rejection. (Reply, ECF No. 13, at 3 (citations omitted)). She asserts that the Commissioner's reference to purportedly normal physical examination results amounts to nothing more than a *post hoc* rationalization of the ALJ's conclusions because she never mentioned them as a basis for her decision, instead citing only Plaintiff's recent finger injury. (Reply, ECF No. 13, at 3 (citations omitted)).

### 2.     Analysis

ALJs must evaluate the persuasiveness of each medical opinion and each prior administrative medical finding. *See id.* § 404.1520c(a). Five factors determine persuasiveness: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *See id.* § 404.1520c(a). Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency. *Id.* § 404.1520c(b)(2).

When faced with conflicting medical opinions, an ALJ may choose who to credit but "must consider all the evidence and give some reason for discounting the evidence he rejects." *Becker v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir. 2010); *Plummer*, 186 F.3d at 429. Although the ALJ need not credit every medical opinion, she must consider every

medical opinion. 20 C.F.R. § 404.1527(b)-(c). Her explanation "must be sufficient enough to permit the court to conduct a meaningful review." *Burnett*, 220 F.3d at 119-20.

Here, the ALJ rejected Dr. Monfared's finding that Plaintiff could only "occasionally" reach in all directions other than overhead – in favor of a restriction that she could instead do so "frequently" – due to Plaintiff's "acute right finger injury." (R. 25). However, it is unclear what Plaintiff's finger injury would have had to do with her ability to reach, which is defined as the ability to "*extend*[ ] the hands and arms . . . ." SSR 85-15, 1985 56857, at *7 (emphasis added). The lack of a connection between reaching and using the fingers is particularly apparent when one considers that the applicable Social Security ruling separately defines "handling" as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands" and "fingering" as "picking, pinching, or otherwise working primarily with the fingers." *Id.* Tellingly, Plaintiff does not challenge the ALJ's rejection of Dr. Monfared's "occasionally" restriction on her handling and fingering abilities, as these could obviously be impacted by the injury. *See id.* But it remains unexplained why she also rejected the similar limitation on Plaintiff's ability to reach other than overhead.

The Commissioner highlights evidence that arguably supports a lesser restriction than determined by the ALJ, including Dr. Monfared's note that Plaintiff generally needed no help during the examination and records showing full strength in the upper extremities, lack of muscle atrophy, intact sensation, and the ability to lift and carry up to 20 pounds.[3] However, as Plaintiff observes, none of this evidence was offered by the ALJ as the basis for discounting the

---

[3] The Commissioner also references a "normal EMG study," but this test was performed on Plaintiff's bilateral lower, not upper, extremities. (R. 330-32).

12

restriction at issue. Accordingly, the Court does not consider it.[4] *See Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision.") (quoting *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008)); *see also Simmonds*, 807 F.2d at 58 ("While there is other evidence in the record that could support a finding of disability . . . , our inquiry is not whether the ALJ could have reasonably made a different finding based on this record. Rather, we must review whether the ALJ's actual findings are supported by substantial record evidence.").

The Commissioner further takes issue with Plaintiff's assumption that the ALJ loosened the "occasionally" (as determined by Dr. Monfared) restriction on non-overhead reaching to "frequently" (as set forth in the RFC) due to the finger injury rather than "the combination of Plaintiff's impairments." (Resp., ECF No. 12, at 12). But, again, the finger injury was the sole reason given for rejecting the manipulative restrictions assessed by Dr. Monfared, including to only "occasionally" reaching in all directions except overhead. (R. 25). Thus, it is the Commissioner who makes a baseless assumption when he attributes the ALJ's rejection of this limitation not to the injury, as the ALJ herself stated, but to some other unspecified collective impairments.

Next, the Commissioner dismisses as "unconvincing" Plaintiff's argument that she could not have performed any of the three occupations identified by the VE if the ALJ had adopted the limitation to only "occasionally" reaching in all directions (including not overhead). (Resp., ECF No. 12, at 12). Pointing out that the DOT does not distinguish between overhead and non-

---

[4] In addition, the Commissioner references Dr. Monfared's findings that Plaintiff needed help tying her gown and that "[s]he had difficulty holding and manipulat[ing] objects as a result [of her injury] and had a weak grip and pincher strength on the right hand . . . ." (R. 1534). But this evidence, as noted in the prior paragraph, goes to Plaintiff's ability to handle and finger, not her ability to reach.

overhead reaching, the Commissioner observes that the ALJ did not restrict Plaintiff to occasional reaching in all directions but instead determined that she "could perform a subset of the broader category of reaching," including frequent reaching in all directions except overhead. (*Id.* at 12-13). He adds that the DOT only sets forth "maximum requirements" generally and that VE testimony like that given here is required to provide "more specific" information about individual job requirements. (*Id.*). But the Commissioner either misunderstands or disregards Plaintiff's argument because it is precisely the ALJ's finding that Plaintiff can engage in more extensive reaching than determined by Dr. Monfared that Plaintiff challenges. This finding, for which the ALJ supplied no basis, infected the hypothetical posed to the VE and, in turn, the resulting testimony upon which the Commissioner now attempts to rely. (R. 51-52). Therefore, although it is true that the VE identified three jobs the specific requirements of which Plaintiff could purportedly fulfill, this testimony was premised on the unsubstantiated RFC finding that Plaintiff could perform "frequent reaching" in all directions other than overhead. (*See id.*).

The Commissioner's remaining attempts to rehabilitate the ALJ's findings regarding Plaintiff's ability to reach other than overhead are similarly unavailing. He claims that in assessing a "frequently" restriction on non-overhead reaching the ALJ appropriately "reached a middle ground" between the State agency medical consultants' findings of no manipulative limitations and Dr. Monfared's finding of an "occasionally" restriction, but it is not enough for the ALJ to resolve conflicting opinions simply by "splitting the difference." Instead, the ALJ must provide a basis "for discounting the evidence he rejects" that is "supported by substantial record evidence," which the ALJ failed to do in this matter. *Simmonds*, 807 F.2d at 58; *Becker*, 403 F. App'x at 686.

Lastly, the Commissioner footnotes that the ALJ was not required to incorporate into the

14

RFC or specifically reject every restriction set forth in Dr. Monfared's opinion simply because she concluded that it was persuasive, particularly where she found it only "partially" so. (Resp., ECF No. 12, at 11 n.11 (citing *Mathews v. Kijakazi*, No. 21-cv-1140, 2022 WL 4535087, at *1 (W.D. Pa. Sept. 28, 2022); *Dingman v. Kijakazi*, No. 21-cv-1946, 2022 WL 3350366, at *6 (E.D. Pa. Aug. 12, 2022))). However, this purported issue is in fact a red herring because the Court's decision to remand this matter is not based on any failure by the ALJ to properly account for every limitation determined by Dr. Monfared in light of the ALJ's conclusion that the opinion is "persuasive" (which, as the Commissioner notes, was in any event not the case in light of the qualified "partially" determination). Instead, remand is warranted because the ALJ rejected a potentially disabling limitation (when considered in conjunction with Plaintiff's other limitations) from a medical source opinion without setting forth substantial evidentiary support for doing so.

Accordingly, the Court remands this matter for further consideration of Dr. Monfared's opinion.

### B. Plaintiff's Remaining Argument

In his second issue raised, Plaintiff asserts that the ALJ erred at step five of the sequential analysis because according to the ALJ's own RFC findings Plaintiff is unable to perform any of the occupations identified by the VE. (Pl.'s Br., ECF No. 11, at 2-8; Reply, ECF No. 11, at 1-3). However, the Court need not decide whether this issue constitutes an independent basis for remand. Because the Court recommends remand of this matter for further consideration of Dr. Monfared's opinion, the ALJ's formulation of Plaintiff's RFC may change, and thus the hypothetical posed to the VE and the occupations, if any, that he or she identifies in response to it may also change. *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa.

Aug. 24, 2005) (not addressing additional arguments because the ALJ may reverse his findings after remand). It is possible that, on remand, the ALJ may reach different conclusions as to the RFC, resulting in an entirely new hypothetical to and different response from the VE.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's Request for Review is **GRANTED**. This matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge